TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
THEODORE MAYA (SBN 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:  310.474.8585

ANDREW W. FERICH*
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone:  310.474.9111
Facsimile:  310.474.8585

BEN BARNOW*
b.barnow@barnowlaw.com
ERICH P. SCHORK*
e.schork@barnowlaw.com
ANTHONY L. PARKHILL*
aparkhill@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: 312.621.2000

* pro hac vice to be filed

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel appear on signature page]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACCELLION, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jaramey Stobbe ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant Accellion, Inc. ("Accellion" or "Defendant").

# NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of himself and all other individuals ("Class Members") who had their sensitive personal information—including but not limited to names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers (SSN), bank account and routing information, information used to process health insurance claims, and prescription information[1] (collectively, "Personal Information")—disclosed to unauthorized third parties during a data breach compromising Accellion's legacy File Transfer Appliance software (the "Data Breach").

2.     Accellion made headlines in late 2020/early 2021 (and continues to receive a raft of negative publicity) following its December 23, 2020 disclosure to numerous clients that criminals breached Accellion's client submitted data via a vulnerability in its represented "secure" file transfer application.[2]

3.     Accellion is a software company that provides third-party file transfer services to clients. Accellion makes and sells a file transfer service product called the File Transfer Appliance ("FTA"). Accellion's FTA is a 20-year-old, obsolete, "legacy product" that was "nearing end-of-life"[3] at the time of the Data Breach, thus leaving it vulnerable to compromise and security incidents.

4.     During the Data Breach, unauthorized persons gained access to Accellion's clients' files by exploiting a vulnerability in Accellion's FTA platform.

---

[1] Rich Barak, *NEW: Kroger data breach investigation continues*, ATLANTA. NEWS. NOW. (Feb. 21, 2021), https://www.ajc.com/news/breaking-kroger-advises-customers-of-data-breach-affecting-pharmacy/R44FKCSVLNDTJHA53ON36HO2CA/ (last visited Feb. 22, 2021).

[2] Lucas Ropek, *The Accellion Data Breach Seems to Be Getting Bigger,* GIZMODO (Feb. 11, 2021, 8:47 P.M.), https://gizmodo.com/the-accellion-data-breach-seems-to-be-getting-bigger-1846250357 (last visited Feb. 22, 2021).

[3] ACCELLION, *Accellion Responds to Recent FTA Security Incident* (Jan. 12, 2021), https://www.accellion.com/company/press-releases/accellion-provides-update-to-recent-fta-security-incident/ (last visited Feb. 22, 2021)

5.      On February 19, 2021, The Kroger Co. ("Kroger") publicly confirmed that the Personal Information of Kroger pharmacy customers, along with "certain associates' HR data . . . and certain money services records," was compromised in the well-publicized Data Breach of its file transfer software vendor, Accellion.

6.      In a press release, Kroger identified that, inter alia, customers of Kroger Health and Money Services were impacted.[4] Little information is available about the disclosure of Kroger employee and money service customer records, but reports indicate more specifically that pharmacy customers of The Little Clinic, Kroger Pharmacies, and Kroger's family of pharmacies operated by Ralphs Grocery Company and Fred Meyer Stores Inc. are all potentially impacted by the Data Breach. Other affiliated pharmacies possibly impacted by the Data Breach include Jay C Food Stores, Dillon Companies, LLC, Baker's, City Market, Gerbes, King Soopers, Quality Food Centers, Roundy's Supermarkets, Inc., Copps Food Center Pharmacy, Mariano's Metro Market, Pick 'n Save, Harris Teeter, LLC, Smith's Food and Drug, Fry's Food Stores, Healthy Options, Inc., Postal Prescription Services, and Kroger Specialty Pharmacy.[5]

7.      On January 23, 2021, Accellion informed Kroger that Kroger's files and information were impacted by the Data Breach. Specifically, Accellion notified Kroger that an unauthorized person gained access to certain Kroger files by exploiting a vulnerability in Accellion's FTA platform.

---

[4] The Kroger Co., *Accellion Security Incident Impacts Kroger Family of Companies Associates and Limited Number of Customers,* CISION PR NEWSWIRE (Feb. 19, 2021, 4:05 P.M.), https://www.prnewswire.com/news-releases/accellion-security-incident-impacts-kroger-family-of-companies-associates-and-limited-number-of-customers-301231891.html (last visited Feb. 22, 2021).

[5] Chris Mayhew, *Kroger advises customers of a data breach affecting pharmacy and Little Clinic,* CINCINATI.COM | THE ENQUIRER (Feb. 19, 2021, 8:34 A.M.), https://www.cincinnati.com/story/news/2021/02/19/kroger-warns-customers-medical-prescriptions-data-breach/4514664001/ (last visited Feb. 22, 2021).

8.     At the time of the Data Breach, Kroger, along with reportedly numerous others, was a client of Accellion. Accellion's services to Kroger, and the other customers, included the use of Accellion's outdated and vulnerable FTA platform for large file transfers. The Personal Information of Kroger's pharmacy customers, employees, and money service customers, among others, was accessed by and disclosed to criminals without authorization because the criminals were able to exploit vulnerabilities in Accellion's FTA product.

9.     Accellion was well aware of the data security shortcomings in its FTA product. Nevertheless, Accellion continued to use FTA with its clients, putting Accellion's file transfer service clients and their clients' customers and employees at risk of being impacted by a breach.

10.     Accellion's failure to ensure that its file transfer services and products were adequately secure fell far short of its obligations and Plaintiff's and Class Members' reasonable expectations for data privacy, has jeopardized the security of their Personal Information, and has put them at serious risk of fraud and identity theft.

11.     As a result of Accellion's conduct and the Data Breach, Plaintiff and Class Members' privacy has been invaded. Their Personal Information is now in the hands of criminals, and they face a substantially increased risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

12.     The acts and failures of Accellion, as described more particularly below, were negligent, negligent per se, and invaded Plaintiff's and Class Members' privacy.

## **PARTIES**

13.     Plaintiff Jaramey Stobbe is a citizen of Wisconsin and resides in Waukesha, Wisconsin.

14.     Plaintiff has received a notice letter from Kroger stating that his Personal Information was compromised by the Data Breach.

15.     In the letter, Kroger confirmed to Plaintiff that "[this] incident involved your personal information" and that the "impacted information may include names, email address and other contact information, date of birth, Social Security number, and for some associates or former associates, may have also included certain salary information. …"

16.     Defendant Accellion Inc. is a Delaware corporation with corporate headquarters located at 1804 Embarcadero Road, Suite 200, Palo Alto, California 94303.

## INTRADISTRICT ASSIGNMENT

17.     Assignment to the San Jose Division is appropriate under Local Rule 3-2(c) because Accellion is headquartered in Palo Alto, California, and a substantial part of the events giving rise to this action and the claims asserted herein occurred in Santa Clara County.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and is a class action in which Plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of the Class members reside in states other than the state in which Defendant is a citizen.

19.     The Court has personal jurisdiction over Accellion because Accellion has a principal office in California, does significant business in California, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in California through its promotion, marketing, and sale of file transfer services.

20.     Venue properly lies in this judicial district because, *inter alia,* Defendant has a principal place of business, transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to the claims occurred in this judicial district.

# FACTUAL ALLEGATIONS

## A.    Accellion and its Unsecure File Transfer Platform, FTA

21.    Accellion is a Palo Alto-based software company that makes, markets, and sells file transfer platforms and services.

22.    Accellion touts its products and services as "prevent[ing] data breaches"[6] and as being secure. On its website, Accellion states:

> The Accellion enterprise content firewall *prevents data breaches and compliance violations from third party cyber risk*. CIOs and CISOs *rely on the Accellion platform for complete visibility, security and control* over . . . *sensitive content* across email, file sharing, mobile, enterprise apps, web portals, SFTP, and automated inter-business workflows.[7]

23.    Accellion also touts its commitment to data privacy, claiming that "[d]ata privacy is a fundamental aspect of the business of Accellion . . . ."[8]

24.    Accellion markets its products and services as capable of safely transferring sensitive Personal Information through file sharing, claiming that "[w]hen employees click the Accellion button, they know it's the *safe*, *secure* way to share sensitive information. . . ."[9]

25.    Despite these assurances and claims, Accellion failed to offer safe and secure file transfer products and services and failed to adequately protect Plaintiff's and Class Members' Personal Information entrusted to it by Accellion's clients, including Kroger.

---

[6] ACCELLION, *About Accellion,* https://www.accellion.com/company/ (last visited Feb. 22, 2021) (last visited Feb. 22, 2021).

[7] *Id.* (emphasis added).

[8] ACCELLION, *Accellion Privacy Policy*, https://www.accellion.com/privacy-policy/ (last visited Feb. 22, 2021).

[9] ACCELLION, *About Accellion*, https://www.accellion.com/company/ (last visited Feb. 22, 2021) (emphasis added).

26. This is because the product that Accellion offered, and which its clients used, was not secure and, by Accellion's own acknowledgment, outdated.

27. The FTA—or File Transfer Appliance—is Accellion's twenty-year-old "legacy" file transfer software, which purportedly is designed and sold for large file transfers.[10]

28. According to Accellion, the product has become an obsolete "legacy product" that was "nearing end-of-life,"[11] thus leaving it vulnerable to compromise and security incidents. Accellion acknowledged that the FTA program is insufficient to keep file transfer processes secure "in today's breach-filled, over-regulated world" where "you need even broad protection and control."[12]

29. Key people within Accellion have acknowledged the need to leave the FTA platform behind due to the security concerns raised by it. Accellion's Chief Marketing Officer Joel York confirmed that Accellion is encouraging its clients to discontinue use of FTA because it does not protect against modern data breaches: "It just wasn't designed for these types of threats . . . ."[13]

---

[10] ACCELLION, *Accellion Responds to Recent FTA Security Incident* (Jan. 12, 2021), https://www.accellion.com/company/press-releases/accellion-responds-to-recent-fta-security-incident/ (last visited Feb. 22, 2021).

[11] ACCELLION, *Press Release, Accellion Provides Update to Recent FTA Security Incident* (Feb. 1, 2021), https://www.accellion.com/company/press-releases/accellion-provides-update-to-recent-fta-security-incident/ (last visited Feb. 22, 2021).

[12] ACCELLION, *Accellion FTA*, https://www.accellion.com/products/fta/ (last visited Feb. 22, 2021).

[13] Jim Brunner & Paul Roberts, *Banking, Social Security info of more than 1.4 million people exposed in hack involving Washington State Auditor*, SEATTLE TIMES (Feb. 3, 2021, 4:57 P.M.), https://www.seattletimes.com/seattle-news/politics/personal-data-of-1-6-million-washington-unemployment-claimants-exposed-in-hack-of-state-auditor/ (last visited Feb. 22, 2021).

CLASS ACTION COMPLAINT

30.    Accellion's Chief Information Security Officer Frank Balonis stated: "Future exploits of [FTA] . . . are a constant threat. We have encouraged all FTA customers to migrate to kiteworks for the last three years and have accelerated our FTA end-of-life plans in light of these attacks. We remain committed to assisting our FTA customers, but strongly urge them to migrate to kiteworks as soon as possible."[14]

31.    Despite knowing that FTA leaves Accellion customers (like Kroger) and third parties interacting and transacting with its customers (like Plaintiff and Class Members) exposed to security threats, it continued to offer and transact business with its customers using the FTA file transfer product.

### B.    The Accellion Data Breach

32.    On December 23, 2020, the inevitable happened: Accellion confirmed to numerous clients that it experienced a massive security breach whereby criminals were able to gain access to sensitive client data via a vulnerability in its FTA platform.[15]

33.    According to reports, the criminals exploited as many as four vulnerabilities in Accellion's FTA to steal sensitive data files associated with up to 300 of Accellion's clients, including corporations, law firms, banks, universities, and other entities.

34.    With respect to how Accellion's FTA was compromised, one report indicates:

> The adversary exploited [the FTA's] vulnerabilities to install a hitherto unseen Web shell named DEWMODE on the Accellion FTA app and used it to exfiltrate data from victim networks. Mandiant's telemetry shows that DEWMODE is designed to extract a list of available files and associated metadata from a MySQL database on Accellion's FTA and then download

---

[14] ACCELLION, *Press Release, Accellion Provides Update to Recent FTA Security Incident* (Feb. 1, 2021), https://www.accellion.com/company/press-releases/accellion-provides-update-to-recent-fta-security-incident/ (last visited Feb. 22, 2021).

[15] Lucas Ropek, *The Accellion Data Breach Seems to Be Getting Bigger,* GIZMODO (Feb. 11, 2021), https://gizmodo.com/the-accellion-data-breach-seems-to-be-getting-bigger-1846250357 (last visited Feb. 22, 2021).

CLASS ACTION COMPLAINT

files from that list via the Web shell. Once the downloads complete, the attackers then execute a clean-up routine to erase traces of their activity.[16]

35.   The criminals, reportedly associated with the well-known Clop ransomware gang, the FIN11 threat group, and potentially other threat actors, launched the attacks in mid-December 2020. The attacks continued from at least mid-December 2020 and into January 2021, as these actors continued to exploit vulnerabilities in the FTA platform. Following the attacks, the criminals resorted to extortion, threatening Accellion's clients, e.g., by email, with making the stolen information publicly available unless ransoms were paid.[17] In at least a few instances, the criminals carried these threats and published private and confidential information online.

36.   An example of a message reportedly sent by the criminals to a client of Accellion that was victimized during the breach is below[18]:

> Hello!
>
> Your network has been hacked, a lot of valuable data stolen. <description of stolen data, including the total size of the compressed files> We are the CLOP ransomware team, you can google news and articles about us. We have a website where we publish news and stolen files from companies that have refused to cooperate. Here is his address http://[redacted].onion/ - use TOR browser or http://[redacted].onion.dog/ - mirror. We are visited by 20-30 thousand journalists, IT experts, hackers and competitors every day. We suggest that you contact us via chat within 24 hours to discuss the current situation. <victim-specific negotiation URL> - use TOR browser We don't want to hurt, our goal is money. We are also ready to provide any evidence of the presence of files with us.

---

[16] Jai Vljayan, *Accellion Data Breach Resulted in Extortion Attempts Against Multiple Victims,* DARKREADING (Feb. 22, 2021, 4:50 P.M.), https://www.darkreading.com/attacks-breaches/accellion-data-breach-resulted-in-extortion-attempts-against-multiple-victims/d/d-id/1340226 (last visited Feb. 24, 2021).

[17] Ionut Ilascu, *Global Accellion data breaches linked to Clop ransomware gang,* BLEEPINGCOMPUTER (Feb. 22, 2021, 9:06 A.M.), https://www.bleepingcomputer.com/news/security/global-accellion-data-breaches-linked-to-clop-ransomware-gang/ (last visited Feb. 22, 2021).

[18] *Id.*

CLASS ACTION COMPLAINT

37.     Accellion has remained in the headlines through early 2021 (and continues to receive a raft of negative publicity) following its mid-December 2020 disclosure of the massive Data Breach. The list of groups and clients who used Accellion's unsecure FTA product and were impacted by the Data Breach continues to increase.

38.     The list, to date, reportedly includes: Singtel, QIMR Berghofer Medical Research Institute, the Office of the Washington State Auditor; the law firms Goodwin Proctor and Jones Day; the University of Colorado; Australia's financial regulator, the Australia Securities and Investments Commission; the Reserve Bank of New Zealand; ABS Group; Danaher; and Fugro.

**C.     Kroger Announces it was Impacted by the Accellion Data Breach**

39.     On February 19, 2021, Kroger joined this list, when it publicly confirmed that the Personal Information of Kroger pharmacy customers, along with "certain associates' HR data . . . and certain money services records," was compromised in the Data Breach. Kroger specifically identified that customers of Kroger Health and Money Services were impacted.[19]

40.     On its website, Kroger provides the following, in pertinent part[20]:

**Information About the Accellion Incident**

Kroger has confirmed that it was impacted by the data security incident affecting Accellion, Inc. Accellion's services were used by Kroger, as well as many other companies, for third-party secure file transfers. Accellion notified Kroger that an unauthorized person gained access to certain Kroger files by exploiting a vulnerability in Accellion's file transfer service.

---

[19] The Kroger Co., *Accellion Security Incident Impacts Kroger Family of Companies Associates and Limited Number of Customers,* CISON PR NEWSWIRE (Feb. 19, 2021, 4:05 P.M.), https://www.prnewswire.com/news-releases/accellion-security-incident-impacts-kroger-family-of-companies-associates-and-limited-number-of-customers-301231891.html (last visited Feb. 22, 2021).

[20] KROGER, *Accellion Incident*, https://www.kroger.com/i/accellion-incident (last visited Feb. 22, 2021).

<u>Here are the facts as we understand them:</u> The incident was isolated to Accellion's services and did not affect Kroger's IT systems or any grocery store systems or data. No credit or debit card (including digital wallet) information or customer account passwords were affected by this incident. After being informed of the incident's effect on January 23, 2021, Kroger discontinued the use of Accellion's services, reported the incident to federal law enforcement, and initiated its own forensic investigation to review the potential scope and impact of the incident.

\*       \*       \*

What information may have been involved?

At this time, based on the information provided by Accellion and our own investigation, Kroger believes the categories of affected data may include certain associates' HR data, certain pharmacy records, and certain money services records.

41.     While little information is currently available about the disclosure of Kroger's employee and money service customer records, reports indicate that the breach was extensive insofar as its impact on Kroger's pharmacy customers, including customers of The Little Clinic, Kroger Pharmacies, and Kroger's family of pharmacies operated by Ralphs Grocery Company and Fred Meyer Stores Inc., all of which are potentially impacted by the Data Breach. Other affiliated pharmacies possibly impacted by the Data Breach include Jay C Food Stores, Dillon Companies, LLC, Baker's, City Market, Gerbes, King Soopers, Quality Food Centers, Roundy's Supermarkets, Inc., Copps Food Center Pharmacy, Mariano's Metro Market, Pick N Save, Harris Teeter, LLC, Smith's Food and Drug, Fry's Food Stores, Healthy Options, Inc., Postal Prescription Services, and Kroger Specialty Pharmacy.[21]

42.     According to Kroger, on January 23, 2021 Accellion notified it that an unauthorized person(s) gained access to Kroger's files containing Plaintiff's and Class Members' Personal Information by exploiting a vulnerability in Accellion's FTA.

---

[21] Chris Mayhew, *Kroger advises customers of a data breach affecting pharmacy and Little Clinic,* CINCINNATI.COM | THE ENQUIRER (Feb. 19, 2021, 8:34 A.M.), https://www.cincinnati.com/story/news/2021/02/19/kroger-warns-customers-medical-prescriptions-data-breach/4514664001/ (last visited Feb. 22, 2021).

CLASS ACTION COMPLAINT

43.     The incident reportedly did not affect Kroger's IT systems and is isolated to Accellion's services. Kroger claims that it has discontinued the use of Accellion's services, reported the incident to federal law enforcement, and initiated its own forensic investigation to review the potential scope and impact of the incident.[22]

44.     Kroger's public statement also identifies that it is working to notify and will offer free credit monitoring to potentially impacted customers.[23]

### D.     **Impact of the Data Breach**

45.     The actual extent and scope of the impact of the Data Breach on Kroger's employees and its pharmacy and money service customers remains uncertain.

46.     Kroger has confirmed that it has stopped using Accellion's services, but unfortunately for Plaintiff and Class Members, the damage is already done.

47.     The harm caused to Plaintiff and Class Members by the Data Breach is already apparent. As identified herein, criminal hacker groups already are threatening Accellion's clients with demands for ransom payments to prevent sensitive Personal Information from being disseminated publicly.

48.     Even if companies, like Kroger, that were impacted by the Accellion Data Breach pay these ransoms, there is no guarantee that the criminals making the ransom demands will suddenly act honorably and destroy the sensitive Personal Information. In fact, there is no motivation for them to do so, given the burgeoning market for sensitive Personal Information on the dark web.

49.     The breach creates a heightened security concern for Plaintiff and Class Members because SSNs and sensitive health and prescription information was included.

---

[22]The Kroger Co., *Accellion Security Incident Impacts Kroger Family of Companies Associates and Limited Number of Customers,* CISION PR NEWSWIRE (Feb. 19, 2021, 4:05 P.M.), https://www.prnewswire.com/news-releases/accellion-security-incident-impacts-kroger-family-of-companies-associates-and-limited-number-of-customers-301231891.html (last visited Feb. 22, 2021).

[23] *Id.*

CLASS ACTION COMPLAINT

Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

50.    Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[24]

51.    Accellion had a duty to keep Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class Members provided their Personal Information to Kroger with the common sense understanding that Kroger and any business partners to whom Kroger disclosed the Personal Information (i.e., Accellion) would comply with their obligations to keep such information confidential and secure from unauthorized disclosures.

52.    Accellion's data security obligations were particularly important given the substantial increase in data breaches—particularly those involving health information— in recent years, which are widely known to the public and to anyone in Accellion's industry of data collection and transfer.

53.    Data breaches are by no means new and they should not be unexpected. These types of attacks should be anticipated by companies that store sensitive and

---

[24] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html (last visited Feb. 22, 2021).

CLASS ACTION COMPLAINT

personally identifying information, and these companies must ensure that data privacy and security is adequate to protect against and prevent known attacks.

54.     It is well known among companies that store sensitive personally identifying information that sensitive information—like the SSNs and prescription and other health information stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[25]

55.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit.  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

56.     There may be a time lag between when sensitive personal information is stolen and when it is used. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, *stolen data may be held for up to a year or more before being used to commit identity theft*.  Further, once stolen data have been sold or posted on the Web, *fraudulent use of that information may continue for years*. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

57.     With access to an individual's Personal Information, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government

---

[25] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last visited Feb. 22, 2021).

[26] *Id.* at 29 (emphasis added).

benefits; or, filing a fraudulent tax return using the victim's information.  In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[27]

58.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years.  As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs and other Personal Information directly on various illegal websites making the information publicly available, often for a price.

59.     A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[28]  Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

60.     Medical information is especially valuable to identity thieves.  According to a 2012 Nationwide Insurance report, "[a] stolen medical identity has a $50 street value – whereas a stolen social security number, on the other hand, only sells for $1."[29]  In fact, the medical industry has experienced disproportionally higher instances of computer theft than any other industry.

---

[27] *See* FEDERAL TRADE COMMISSION, WARNING SIGNS OF IDENTITY THEFT, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Feb. 22, 2021)

[28] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 A.M.), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims (last visited Feb. 22, 2021).

[29] Study: Few Aware of Medical Identity Theft Risk, CLAIMS JOURNAL (June 14, 2012), http://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited Feb. 22, 2021).

CLASS ACTION COMPLAINT

61.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Accellion failed to take reasonable steps to adequately protect its systems from being breached and to properly phase out its unsecure FTA platform, leaving its clients and all persons who provide sensitive Personal Information to its clients exposed to risk of fraud and identity theft.

62.     Accellion is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing its file transfer services is highly sensitive. As a company that provides file transfer services involving highly sensitive and identifying information, Accellion is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

63.     Accellion was aware, or should have been aware, of regulatory and industry guidance regarding data security, and it was alerted to the risk associated with failing to ensure that its file transfer product FTA was adequately secured, or phasing out the platform altogether.

64.     Despite the well-known risks of hackers and cybersecurity intrusions, Accellion failed to employ adequate data security measures in connection with offering its file transfer products and services in a meaningful way in order prevent breaches, including the Data Breach.

65.     The security flaws inherent to Accellion's FTA file transfer platform—and continuing to market and sell a platform with known, unpatched security issues—run afoul of industry best practices and standards. Had Accellion adequately protected and secured FTA, or stopped supporting the product when it learned years ago about its vulnerabilities, it could have prevented the Data Breach.

66.     Despite the fact that Accellion was on notice of the very real possibility of data theft associated with the FTA platform, it still failed to make necessary changes to the product or to stop offering and supporting it, and permitted a massive intrusion to

occur that resulted in the FTA platform's disclosure of Plaintiffs' and Class members' Personal Information to criminals.

67.   Accellion permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

68.   Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[30]

69.   As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

70.   Victims of the Data Breach have likely already experienced harms, which is made clear by news of attempts to exploit this information for money by the hackers responsible for the breach.

71.   As a result of Accellion's failure to ensure that its FTA product was protected and secured, or to phase out the platform upon learning of FTA's vulnerabilities, the Data Breach occurred. As a result of the Data Breach, Plaintiff and

---

[30] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 26, 2017), http://www.reuters.com/article/us-chipotle-cyber-idUSKBN18M2BY (last visited Feb. 22, 2021).

CLASS ACTION COMPLAINT

Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

72.    Plaintiff brings this action on his own behalf, and on behalf of the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
>
> All residents of the United States whose Personal Information was compromised in the Accellion Data Breach occurring in December 2020 and January 2021.

73.    Excluded from the Class are Accellion and its affiliates, officers, directors, assigns, successors, and the Judge(s) assigned to this case.

74.    **Numerosity**: While the precise number of Class Members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class appears to include many thousands of members who are geographically dispersed.

75.    **Typicality**: Plaintiff's claims are typical of Class Members' claims. Plaintiff and all Class Members were injured through Accellion's uniform misconduct and assert identical claims against Accellion. Accordingly, Plaintiff's claims are typical of Class Members' claims.

76.    **Adequacy**: Plaintiff's interests are aligned with the Class he seeks to represent and has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

77.    **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class Member's claims. The

CLASS ACTION COMPLAINT

injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for class members individually to effectively redress Accellion's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

78.     **Commonality and Predominance:** The following questions common to all Class Members predominate over any potential questions affecting individual Class Members:

- whether Accellion engaged in the wrongful conduct alleged herein;
- whether Accellion was negligent or negligent per se;
- whether Accellion's data security practices and the vulnerabilities of its FTA product resulted in the disclosure of Plaintiff's and other Class Members' Personal Information;
- whether Accellion violated privacy rights and invaded Plaintiff's and Class Members' privacy; and
- whether Plaintiff and Class Members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

79.     Given that Accellion has engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

CLASS ACTION COMPLAINT

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

80.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

81.     Accellion negligently sold its FTA product which it has acknowledged is vulnerable to security breaches, despite representing that the product could be used securely for large file transfers.

82.     Accellion was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class Members.

83.     Accellion knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class Members, and to not ensuring that the FTA product was secure. These risks were reasonably foreseeable to Accellion, because Accellion had previously recognized and acknowledged the data security concerns with its FTA product.

84.     Accellion owed duties of care to Plaintiff and Class Members whose Personal Information had been entrusted to Accellion.

85.     Accellion breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security in connection with marketing and selling its FTA product. Accellion had a duty to safeguard Plaintiff's and Class Members' Personal Information and to ensure that its systems and products adequately protected Personal Information. Accellion breached its duty.

86.     Accellion's duty of care arises from its knowledge that its customers, like Kroger, entrust to it highly sensitive Personal Information that Accellion is intended to, and represents that it will, handle securely. Only Accellion was in a position to ensure that its systems and products were sufficient to protect against breaches that exploit its FTA product and the harms that Plaintiff and Class Members have now suffered.

87.   A "special relationship" exists between Accellion, on the one hand, and Plaintiff and Class Members, on the other hand. Accellion entered into a "special relationship" with Plaintiff and Class Members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class Members to Accellion's clients.

88.   But for Accellion's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

89.   Accellion acted with wanton disregard for the security of Plaintiff's and Class Members' Personal Information, especially in light of the fact that for years Accellion warned of the data security concerns relating to the FTA.

90.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Accellion's breach of its duties. Accellion knew or should have known that it was failing to meet its duties, and that Accellion's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

91.   As a direct and proximate result of Accellion's negligent conduct, Plaintiff and Class Members now face an increased risk of future harm.

92.   As a direct and proximate result of Accellion's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT II
### Negligence Per Se
### (On Behalf of Plaintiff and the Class)

93.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

94.   Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Accellion had a duty to provide adequate data security practices, including in connection with its sale of its FTA platform, to safeguard Plaintiff's and Class Members' Personal Information.

CLASS ACTION COMPLAINT

95.     Pursuant to HIPAA (42 U.S.C. § 1302d *et. seq*.), Accellion had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Personal Information.

96.     Accellion breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act (15 U.S.C. § 45) and HIPAA (42 U.S.C. § 1302d *et. seq*.), among other laws, by failing to provide fair, reasonable, or adequate data security in connection with the sale and use of the FTA platform in order to safeguard Plaintiff's and Class Members' Personal Information.

97.     Accellion's failure to comply with applicable laws and regulations constitutes negligence per se.

98.     But for Accellion's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

99.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Accellion's breach of its duties. Accellion knew or should have known that it was failing to meet its duties, and that Accellion's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

100.    As a direct and proximate result of Accellion's negligent conduct, Plaintiff and Class Members now face an increased risk of future harm. As a direct and proximate result of Accellion's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
### Invasion of Privacy (Intrusion Upon Seclusion)
### (On Behalf of Plaintiff and the Class)

101.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

102.    Plaintiff and Class Members had a reasonable expectation of privacy in the Personal Information that Accellion disclosed without authorization.

103.   By failing to keep Plaintiff's and Class Members' Personal Information safe, knowingly utilizing the unsecure FTA platform, and disclosing Personal Information to unauthorized parties for unauthorized use, Accellion unlawfully invaded Plaintiff's and Class Members' privacy by, *inter alia*:

(a)   intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; and

(b)   invading Plaintiff's and Class Members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

(c)   failing to adequately secure their Personal Information from disclosure to unauthorized persons;

(d)   enabling the disclosure of Plaintiff's and Class Members' Personal Information without consent.

104.   Accellion knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

105.   Accellion knew that its FTA platform was vulnerable to data breaches prior to the Data Breach.

106.   Defendant invaded Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

107.   As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class Members' protected privacy interests.

108.   In failing to protect Plaintiff's and Class Members' Personal Information, and in disclosing Plaintiff's and Class Members' Personal Information, Accellion acted

with malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

109.   Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A.     Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B.     Award Plaintiff and Class Members actual and statutory damages to the maximum extent allowable;

D.     Award Plaintiff and Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

E.     Award Plaintiff and Class Members reasonable attorneys' fees, costs, and expenses, as allowable;

F.     Award Plaintiff and Class Members injunctive and all other equitable relief as allowable; and

G.     Award Plaintiff and Class Members such other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  February 24, 2021                    Respectfully submitted,

                                             */s/ Tina Wolfson*
                                             TINA WOLFSON (SBN 174806)
                                             *twolfson@ahdootwolfson.com*
                                             ROBERT AHDOOT (SBN 172098)
                                             *rahdoot@ahdootwolfson.com*
                                             THEODORE MAYA (SBN 223242)
                                             *tmaya@ahdootwolfson.com*
                                             **AHDOOT & WOLFSON, PC**

2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:   310.474.8585

ANDREW W. FERICH*
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone:  310.474.9111
Facsimile:   310.474.8585

BEN BARNOW*
b.barnow@barnowlaw.com
ERICH P. SCHORK*
e.schork@barnowlaw.com
ANTHONY L. PARKHILL*
aparkhill@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60602
Telephone: 312-621-2000
Facsimile: 312-641-5504

CORNELIUS P. DUKELOW*
cdukelow@abingtonlaw.com
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
Tel. & Fax: 918.588.3400
Toll Free Tel. & Fax: 800.969.6570
www.abingtonlaw.com

*Attorneys for Plaintiff and the Proposed Class*

* *pro hac vice* to be filed

CLASS ACTION COMPLAINT